**Not for Publication**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| VECTRA VISUAL, INC., <br>         *Plaintiff*, <br> v. <br> ANNE HOVING, <br>         *Defendant*, | Civil Action No. 21-cv-03296 <br><br> **OPINION** |

**John Michael Vazquez, U.S.D.J.**

This action arises out of Plaintiff's allegations that its former employee, Defendant, misappropriated Plaintiff's trade secrets and breached a confidentiality and non-compete agreement between the parties. Currently pending is Defendant's motion to dismiss, D.E. 20, Plaintiff's Verified Amended Complaint, D.E. 5 ("AC"), for lack of personal jurisdiction and improper venue. The Court reviewed the parties' submissions[1] in support and in opposition and decided the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons stated below, Defendant's motion is denied without prejudice so that the parties make take limited jurisdictional discovery.

**I.      BACKGROUND**

Plaintiff Vectra Visual, Inc. ("Vectra") is a Minnesota corporation with its principal place of business in Oregon; Vectra is in the retail signage and graphics business. AC ¶ 1. Defendant Anne Hoving is a former employee of Plaintiff who lives in California, D.E. 20-3 at 2, ¶ 7; before

---

[1] Defendant's motion to dismiss, D.E. 20 ("Br."); Plaintiff's opposition, D.E. 28 ("Opp."); and Defendant's reply in further support of their motion to dismiss, D.E. 29.

February 2021, Defendant lived in Washington state. *Id.*; *see also* AC ¶ 2. A predecessor company to Plaintiff, PhotoCraft, Inc. ("PhotoCraft"),[2] hired Defendant as a "Sales Account Executive" on April 1, 2016. AC ¶ 11. In that role, Defendant "was responsible for establishing, fostering and maintaining relationships with large customers." *Id*.

Defendant and PhotoCraft entered into a Confidential Information, Intellectual Property and Non-Competition Agreement (the "Agreement"). *Id.* ¶ 12. The Agreement restricted Defendant's ability to disclose and use PhotoCraft's "Confidential Information" and "Company Property," as defined in the Agreement, *id.* ¶¶ 14-16; *see also* D.E. 5 at 34, ¶¶ 1, 9(c), 9(d). The Agreement also restricted Defendant's ability to solicit PhotoCraft's "Customers" and "Prospects," as those terms are defined in the Agreement, AC ¶¶ 17, 19, and from working with a "Competitor" of PhotoCraft,[3] as that term is defined in the Agreement, *id.* ¶ 18, during, and for one year after, her employment with PhotoCraft. *See also* D.E. 5 at 34, ¶ 2. Defendant also agreed to abide by Taylor Communications Inc.'s Confidential Information, Conflict of Interest, and Anti-Bribery policies set forth in Taylor's Employee Handbook. *Id.* ¶¶ 29-32.

Plaintiff also alleges that Hoving entered into Sales Compensation Plans in 2020 and 2021. *Id.* ¶ 49. Vectra claims that as a condition of payment under the plans, Defendant was obligated to (1) execute "a legally valid and enforceable Agreement on Intellectual Property, Confidential Information, Non-Solicitation and Non-competition"; and (2) to not breach "any fiduciary or other

---

[2] The Amended Complaint explains that PhotoCraft and Vectra merged into Taylor Communications Inc., a subsidiary of Taylor Corporation. AC ¶ 7. The combined assets of PhotoCraft. and Vectra were then divested from Taylor Communications Inc. on January 1, 2020 to create Vectra Visual, Inc., a wholly-owned subsidiary of Taylor Corporation. *Id*. Taylor Corporation is a Minnesota entity.

[3] Plaintiff states that "[w]hile the Agreement . . . executed contains a non-compete provision, pending further investigation, Plaintiff at this juncture is not seeking to enforce it against [Defendant]." AC ¶ 24.

material obligation owed to [Plaintiff], including . . . any obligations arising under any confidentiality or non-competition covenant." *Id*. ¶ 51.

Plaintiff describes Defendant as a "well-compensated" employee who made "in excess of $250,000.00 annually." *Id*. ¶ 33. Hoving was responsible for three "main" accounts – described for confidentiality purposes as Clients 1, 2, and 3 – while employed by Plaintiff. *Id*. ¶ 34. The "vast majority" of Defendant's work was with Client 1. *Id*. ¶ 35. Plaintiff alleges that most of Defendant's expenses were related to travel and entertainment associated with Client 1, *id*. ¶ 36, and that Hoving repeatedly took Client 1 out to "lavish meals" all charged to her corporate account. *Id*. ¶ 37. Vectra alleges that it entered into an expense agreement (the "Expense Agreement") with Defendant because her expenses for Client 1 were far in excess of Plaintiff's permitted expenditures. *Id*. ¶ 38. Vectra adds that between October 2020 and February 2021, Hoving exceeded the limit of the Expense Agreement by $4,700 and failed to reimburse Plaintiff for these costs. *Id*. ¶ 40.

Defendant voluntarily resigned from Vectra effective February 16, 2021. *Id*. ¶ 56. Plaintiff alleges that Hoving subsequently began working for Primary Color, Inc. ("Primary Color"), Plaintiff's competitor. *Id*. ¶ 57. Plaintiff claims that leading up to Defendant's resignation, she met with Primary Color employees and discussed business plans containing Vectra's confidential information. *Id*. ¶ 63. In particular, Hoving allegedly met with K.T., a former employee of Client 1 who later began working for Primary Color, on three occasions. *Id*. ¶¶ 68-69. A January 30, 2021 meeting between Defendant and K.T. took place in New Jersey. *Id*. ¶ 69. Plaintiff believes that during this meeting, Defendant and K.T. developed their plan to move Client 1's business to Primary Color. Opp. Br. at 13. Plaintiff alleges upon information and belief that as of January 30, 2021, K.T. was an employee of Primary Color. AC ¶ 69. Plaintiff also claims that beginning in

mid-January 2021, Defendant began forwarding to her private e-mail account information containing contact information and materials for Vectra's clients, including Client 1. *Id.* ¶¶ 70, 74. Hoving also allegedly stored Confidential Information on an external storage device during the final days of her employment. *Id.* ¶ 73.

Plaintiff alleges that three days after Defendant left Vectra, Primary Color attempted to purchase from one of Plaintiff's vendors stock paper that was a special order made for the sole purpose of servicing Client 1. *Id.* ¶ 60. Several days later, Vectra was informed that Primary Color had represented to the vendor that it had Client 1's retail signage business. *Id.* ¶ 61.

Plaintiff filed its initial Complaint, D.E. 1, followed by an Amended Complaint on March 17, 2021, D.E. 5.[4] The Amended Complaint asserts nine counts: (1) violation of the Defend Trade Secrets Act; (2) breach of the non-solicitation and confidentiality provisions in the Agreement; (3) breach of the Expense Agreement; (4) tortious interference with prospective economic advantage; (5) breach of the duty of loyalty; (6) unfair competition; (7) breach of the Sales Compensation Plans; (8) conversion; and (9) civil conspiracy. AC ¶¶ 79-148. The current motion followed. Defendant moves to dismiss the Amended Complaint for lack of personal jurisdiction and improper venue, or in the alternative, to transfer venue.

## II. STANDARD OF REVIEW

In a motion to dismiss for lack of personal jurisdiction, the plaintiff "bears the burden of demonstrating the facts that establish personal jurisdiction." *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002). Initially, a court "take[s] the allegations of the complaint as true." *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996). However, once a defendant

---

[4] The Court also granted Plaintiff's motion for temporary restraints, D.E. 18, which was later modified by consent, D.E. 36.

raises a jurisdictional defense, "a plaintiff bears the burden of proving by affidavits or other competent evidence that jurisdiction is proper." *Id.*; *see also Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984). Plaintiff must establish "with reasonable particularity sufficient contacts between the defendant and the forum state." *Otsuka Pharm. Co. v. Mylan Inc.*, 106 F. Supp. 3d 456, 462 (D.N.J. 2015) (citing *Mellon Bank (E) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)). Yet, in reviewing the evidence, a court must "accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." *Carteret Sav. Bank v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992); *see also Metcalfe v. Renaissance Marine, Inc.* 566 F.3d 324, 330 (3d Cir. 2009) ("[I]t is well established that in deciding a motion to dismiss for lack of jurisdiction, a court is required to accept the plaintiff's allegations as true, and is to construe disputed factors in favor of the plaintiff") (internal quotation marks omitted). Therefore, in determining whether personal jurisdiction exists, the Court looks beyond the pleadings to all relevant evidence and construes all disputed facts in favor of the plaintiff.

### III. ANALYSIS

#### A. Personal Jurisdiction

"[A] federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state" so long as the jurisdiction comports with the Due Process Clause of the Fourteenth Amendment. *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007) (internal quotation marks omitted). The inquiry thus involves a two-step process: first looking to the state requirements and then to the constitutional requirements. *IMO Indus., Inc. v. Kiekart AG*, 155 F.3d 254, 259 (3d Cir. 1998). New Jersey's long-arm jurisdiction law provides that courts may "exercise jurisdiction over a non-resident defendant to

the uttermost limits permitted by the United States Constitution." *Nicastro v. McIntyre Mach. Am., Ltd.*, 201 N.J. 48, 72 (2010) (internal quotation marks omitted), *rev'd on other grounds sub nom.*, *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873 (2011). Accordingly, the two steps are collapsed into one and a court "ask[s] whether, under the Due Process Clause, the defendant has certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007) (internal quotation marks omitted). In other words, to establish personal jurisdiction, the Due Process Clause requires (1) minimum contacts between the defendant and the forum; and (2) that jurisdiction over the defendant comports with "'fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)).

The "constitutional touchstone remains whether the defendant purposefully established 'minimum' contacts in the forum State." *Id.* at 474 (citing *Int'l Shoe Co.*, 326 U.S. at 316). A defendant must have "fair warning" that its conduct will subject it to the jurisdiction of a foreign court. *Id.* at 472. A defendant's conduct and connection with the forum state must be such that the defendant should reasonably anticipate being haled into court there. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Once a plaintiff demonstrates a *prima facie* case of personal jurisdiction by establishing minimum contacts, the burden shifts to the defendant. In fact, once minimum contacts have been shown, jurisdiction is "presumptively constitutional." *O'Connor*, 496 F.3d at 324. A defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp.,* 471 U.S. at 477.

Personal jurisdiction may be established by means of general jurisdiction or specific jurisdiction over a defendant.[5] *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). If a defendant is subject to a forum's general jurisdiction, she can be sued there on any matter. *Id*. If, however, a defendant is solely subject to specific jurisdiction, she may only face suit in the forum if its activities concerning the forum are related to the claims in the suit. *Id*.

### 1. General Personal Jurisdiction

"To achieve general jurisdiction over an individual or corporation, affiliations with the forum state must be 'so continuous and systematic as to render them essentially at home in the forum State.'" *Koch v. Pechota*, 744 F. App'x 105, 110 (3d Cir. 2018) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Goodyear Dunlop Tires Operations, S.A.*, 564 U.S. at 919. Though domicile is not the exclusive means by which to establish general jurisdiction, if "a defendant's contacts 'plainly [do] not approach' the quantity required for general jurisdiction, [the] Court need not inquire as to the other means by which a defendant can satisfy general jurisdiction." *Allaham v. Naddaf*, 635 F. App'x 32, 38 (3d Cir. 2015) (first alteration in original) (quoting *Daimler AG*, 571 U.S. at 139 n.19).

Here, it is undisputed that Defendant is not a resident of New Jersey. *See* AC ¶ 2; Br. at 11. Plaintiff apparently concedes that general jurisdiction over Defendant does not exist here. Opp. at 10-19. Defendant is not domiciled in New Jersey, and Defendant's sales to clients in New

---

[5] Personal jurisdiction can also be obtained through consent, waiver, or in-state service on an individual defendant. *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 590-97 (1991) (regarding consent via a forum selection clause); *Burnham v. Superior Court of Cal.*, 495 U.S. 604, 628 (1990) (regarding in-state service); *In re Asbestos Products Liability Litigation (No. VI)*, 921 F.3d 98, 104-05 (3d Cir. 2019) (regarding waiver); *Jasper v. Bexar Cty. Adult Detention Center*, 332 F. App'x. 718, 719 (3d Cir. 1999) (regarding consent).

Jersey, her telephone and email communications with client representatives located in New Jersey, and her occasional visits to New Jersey do not constitute "continuous and systematic" affiliations sufficient to confer general jurisdiction over Defendant. *See Allaham*, 635 F. App'x at 38-39 (finding that the appellant had failed to establish general jurisdiction because he alleged that the appellees were domiciled outside of the forum state and provided no other evidence indicative of continuous and systematic contacts with the forum state).

### 2. Specific Personal Jurisdiction

Specific jurisdiction requires that the defendant "purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp.*, 471 U.S. at 472 (internal citations and quotation marks omitted). The minimum contacts analysis depends upon "the relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977). However, actual "[p]hysical presence within the forum is not required to establish personal jurisdiction over a nonresident defendant." *IMO Indus., Inc.*, 155 F.3d at 259.

The Third Circuit has laid out a three-part test to determine whether specific jurisdiction exists as to a particular defendant. *O'Connor*, 496 F.3d at 317. First, the defendant must have "purposefully directed [its] activities at the forum." *Id.* (internal quotation marks omitted). This factor has also been characterized as "purposeful availment," and focuses on contact that the defendant itself created within the forum state. *Burger King Corp.*, 471 U.S. at 475. The "purposefully directed" or "purposeful availment" requirement is designed to prevent a person from being haled into a jurisdiction "solely as the result of random, fortuitous, or attenuated contacts" or due to the "unilateral activity of another party or third person." *Id.* (internal quotation marks omitted) (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)); *World-Wide*

*Volkswagen Corp.*, 44 U.S. at 299; *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984)).

Second, the litigation must "arise out of or relate to at least one of those activities." *O'Connor*, 496 F.3d at 317 (internal quotation marks omitted). This has been described as the "relatedness" element. To meet this element, the "causal connection can be somewhat looser than the tort concept of proximate causation, but it must nonetheless be intimate enough to keep the *quid pro quo* proportional and personal jurisdiction reasonably foreseeable." *Id.* at 323 (citation omitted). This is a "necessarily fact-sensitive" inquiry designed to "keep the jurisdictional exposure that results from a contact closely tailored to that contact's accompanying substantive obligations." *Id*.

Third, if the first two requirements are met, the exercise of jurisdiction must "otherwise comport with fair play and substantial justice." *Id*. at 317 (internal quotation marks omitted). To prevail on this portion of the analysis, "the defendant must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id*. (internal quotation omitted).

A specific jurisdiction analysis is claim-specific. *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001). Accordingly, variations of the *O'Connor* test may apply depending on the nature of the action, for example if a breach of contract or intentional tort is alleged. "In determining jurisdiction over a breach of contract claim, [the court] must consider the totality of the circumstances, including the location and character of the contract negotiations, the terms of the contract, and the parties' actual course of dealing." *Id.* at 256. Additionally, "[i]n evaluating the 'relatedness' requirement with regard to a contract claim, 'courts should inquire whether the defendant's contacts with the forum were instrumental in either the formation of the contract or its

9

breach.'" *Maximum Quality Foods, Inc. v. DiMaria*, No. 14-6546, 2015 WL 1865754, at *7 (D.N.J. Mar. 23, 2015) (quoting *O'Connor*, 496 F.3d at 320). Physical entrance into the jurisdiction is not required, during negotiations or any other time, to find jurisdiction over a non-resident. *Corigliano v. Classic Motor, Inc.*, 611 F. App'x 77, 80 (3d Cir. 2015); *Grand Entm't Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 482 (3d Cir. 1993). Rather, telephone, wire, and other electronic "communications can constitute contacts with the forum state." *Telcordia Tech Inc. v. Telkom SA Ltd.,* 458 F.3d 172, 177 (3d Cir. 2006) (citing *Burger King Corp.*, 471 U.S. at 476); *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 151 (3d Cir. 2001).

When an intentional tort is alleged, a slight variation from the *O'Connor* three-part test applies, known as the *Calder* effects test, *O'Connor*, 496 F.3d at 317 n.2, stemming from the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984). The *Calder* effects test "can demonstrate a court's jurisdiction over a defendant even when the defendant's contacts with the forum alone [] are far too small to comport with the requirements of due process under [a] traditional analysis." *Marten*, 499 F.3d at 297 (internal quotation marks omitted). Under *Calder*, "an intentional tort directed at the plaintiff and having sufficient impact upon [the plaintiff] in the forum may suffice to enhance otherwise insufficient contacts with the forum such that the 'minimum contacts' prong of the Due Process test is satisfied." *IMO Indus., Inc.*, 155 F.3d at 260. In *IMO Industries* ("*IMO*") The Third Circuit held that the *Calder* effects test requires a plaintiff to show the following:

> (1) The defendant committed an intentional tort; (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; (3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity[.]

*IMO Indus., Inc.*, 155 F.3d at 265-66 (footnote omitted). The *Calder* effects test, as interpreted by the Third Circuit, requires that a defendant's "'conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there.'" *Marten*, 499 F.3d at 297 (quoting *World-Wide Volkswagen,* 444 U.S. at 297).

The Court first analyzes whether Defendant purposefully directed her activities at New Jersey. *See O'Connor*, 496 F.3d at 317. Plaintiff recites a slew of connections between Defendant and New Jersey in support of its argument that Defendant purposefully established the requisite minimum contacts with the forum. Plaintiff points to Defendant's meetings with K.T., who worked for Client 1 and was a resident of New Jersey. Opp. at 13. Specifically, Plaintiff alleges that Defendant and K.T. met on three occasions to develop their plan to move Client 1's business to Plaintiff's competitor; of those three occasions, the meeting held on January 30, 2021 allegedly took place in New Jersey. *Id.* at 14. Vectra also claims that Hoving used its funds to buy furniture from Restoration Hardware and rerouted those shipments to her home and to K.T.'s home in New Jersey. *Id*. at 7. Plaintiff adds that Defendant emailed with Client 1 employees in New Jersey "on a weekly and often daily basis." *Id.* at 14. Finally, Plaintiff alleges that since February 2017, Defendant has flown to New Jersey 18 times and spent 55 nights in New Jersey hotels at Vectra's expense, and that since June 2019, Hoving used her Vectra credit card in New Jersey on 58 separate dates "to service and develop Vectra Visual's goodwill with Client 1." *Id.*

Defendant's various communications with individuals in New Jersey and trips to New Jersey may be sufficient to establish that she purposefully availed herself of the forum although the Court has concerns that many of the alleged contacts are unrelated to Hoving's alleged wrongdoing. Other courts have found that this requirement was satisfied where the defendant directed communications at an individual in the forum state and attended one meeting in the forum

11

state. *See*, *e.g.*, *Carteret*, 954 F.2d at 149-50 (finding that purposeful availment requirement was met where the defendant corresponded by phone and letters with the plaintiff's employees in New Jersey and attended a meeting in New Jersey that was a "culminating event" in the defendant's representation of the plaintiff); *Williams v. Ying Zhou*, No. 2:14-CV-5544-KM-MAH, 2018 WL 648354, at *4 (D.N.J. Jan. 30, 2018) (finding that the purposeful availment requirement was met where the defendants sent emails and the operative contract to the plaintiff in New Jersey and met once with the plaintiff in New Jersey to discuss the agreement at issue). But these cases are distinguishable. In *Carteret*, the plaintiff's principal place of business was in New Jersey, 954 F.2d at 143, and in *Williams*, the plaintiffs were a New Jersey resident and a New Jersey corporation with its principal place of business in New Jersey, 2018 WL 648354, at *1. Similarly, other cases to which Plaintiff cites discuss solicitation of a *forum's resident* by a nonresident defendant, *see Miller v. Adler*, No. 17-7149, 2018 WL 3201791, at *3-4 (D.N.J. June 29, 2018), and telephone and email contacts with a *New Jersey-based company*, *see Display Works, LLC v. Bartley*, 182 F. Supp. 3d 166, 170 (D.N.J. 2016).

However, assuming without deciding that Plaintiff has shown purposeful availment, Plaintiff has not established the relatedness requirement. The second aspect of the specific jurisdiction inquiry concerns whether the litigation arises out of or relates to at least one of the defendant's contacts with New Jersey. *See O'Connor*, 496 F.3d at 317. With regard to Vectra's contract claims, Plaintiff has not shown that Defendant's contacts with New Jersey were "instrumental in either the formation or the breach of the contracts at issue." *O'Connor*, 496 F.3d at 320. For several claims, Plaintiff fails to draw any connection between the alleged breach and the forum. For example, Plaintiff alleges that Defendant exceeded the limit of the Expense Agreement by $4,700, AC ¶ 40, but does not claim that this overspending resulted from

12

expenditures made in, or related to, New Jersey. Similarly, Plaintiff fails to tie to New Jersey Hovings's alleged wrongdoing relating to forwarding emails with Confidential Information and downloading Confidential Information on an external storage device. *Id.* ¶¶ 70, 73, 74.

Further, though Vectra lists various contacts that Defendant had with New Jersey, Plaintiff has not demonstrated how these contacts relate to the present litigation. For instance, Plaintiff states that Hoving communicated regularly with Client 1 employees in New Jersey, and over the course of several years, traveled to New Jersey, and used her Vectra credit card in New Jersey "to service and develop Vectra Visual's goodwill with Client 1." Opp. at 14. However, Plaintiff does not explain how these communications or activities related to the alleged scheme to "divert[] funds from Vectra Visual and Client 1" and "compete against Vectra Visual and steal its accounts." AC ¶ 45. Thus, the causal connection between these contacts and the present litigation are not "intimate enough to keep…personal jurisdiction reasonably foreseeable." *O'Connor*, 496 F.3d at 323. The Court does not doubt that Hoving needed first to develop a relationship with Client 1 before she could improperly attempt to take Client 1's business from Vectra. But it appears that this earlier work was done on behalf of Vectra (or at least Vectra has not made any plausible allegations to the contrary), and Vectra has not cited to any cases that such contacts satisfy a specific personal jurisdiction inquiry. In other words, Vectra has not cited to authority indicating that prior legitimate work by an employee, unconnected to any alleged wrongdoing, can satisfy its burden.

Plaintiff additionally alleges that Defendant met with K.T., a resident of New Jersey, on three occasions to develop a plan to move Client 1's business to Plaintiff's competitor, Primary Color. AC ¶¶ 68-69. These meetings occurred on August 25, 2020; September 30, 2020; and January 30, 2021, around the time that Defendant allegedly (1) authored a "Transition Plan"

13

reflecting the necessary steps to move Client 1's account to Primary Color, and (2) began forwarding emails with Vectra's client information to her private e-mail account. AC ¶¶ 64, 70. Notably, though, Plaintiff does not state that the meetings on August 25, 2020 and September 30, 2020 occurred in New Jersey or otherwise establish a connection between those meetings and the forum.

The Amended Complaint does assert that the meeting on January 30, 2021 occurred in New Jersey. AC ¶ 69. However, beyond Plaintiff's stated "belie[f] that [Defendant] and K.T. further developed their plan to move Client 1's business to [Plaintiff's] competitor" during this meeting, Opp. at 13, Plaintiff provides no information detailing how this meeting relates to the claims at issue. While a single contact can satisfy the relatedness requirement "if that very communication gave rise to the cause of action," Plaintiff has not sufficiently demonstrated that connection here. *Carrabba v. Morgat*, No. Civ. 2:12-6342 KM, 2014 WL 229280, at *5 (D.N.J. Jan. 17, 2014). In total, the facts alleged fall short of supporting a finding of relatedness. *C.f. Williams*, 2018 WL 648354, at *4 (finding that the relatedness requirement *was* satisfied where the defendants sent communications to New Jersey to contact a New Jersey resident and facilitate a business relationship, went to New Jersey to meet the New Jersey resident, and sent a contract at issue to New Jersey).

Because the Court finds that Plaintiff failed to satisfy the relatedness prong, it does not reach the final requirement, traditional notions of fair play and substantial justice. *See O'Connor*, 496 F.3d at 317 ("*[I]f* the [first] two requirements [of specific jurisdiction] are met, a court may consider whether the exercise of jurisdiction otherwise comports with fair play and substantial justice.") (emphasis added) (internal quotation omitted).

Because Plaintiff brings intentional tort claims, the Court also considers whether personal jurisdiction is proper under the *Calder* effects test.[6] The Court finds that it is not. Plaintiff has not established that it "felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by [Plaintiff] as a result of that tort." *IMO Indus., Inc.*, 155 F.3d at 265-66. Vectra is a Minnesota corporation with a principal place of business in Oregon. AC ¶ 1. Client 1 is likewise not headquartered or incorporated in New Jersey, Br. at 5, nor is Primary Color, AC ¶ 57. Plaintiff cites to no authority indicating that under these circumstances, New Jersey can be considered the focal point of the harm suffered by it. Indeed, Third Circuit precedent suggests that the opposite is true. *See Remick*, 238 F.3d at 260 (finding that "the brunt of the harm caused by the alleged intentional tort must necessarily have been felt by Remick in Pennsylvania, as his business practice is based in Philadelphia."); *see also MaxLite, Inc.*, 193 F. Supp. 3d at 388 (finding that the brunt of the harm was felt in New Jersey where the plaintiff was headquartered in New Jersey, hired the defendants in New Jersey, and signed the agreements at issue in New Jersey).

Further, the third prong of the *Calder* analysis requires a plaintiff to "show that the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, and point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum." *IMO Indus., Inc.*, 155 F.3d at 266. Plaintiff has not provided any indication that Hoving *knew* that Plaintiff would suffer the brunt of the harm in New Jersey or that Hoving directed her wrongful conduct at the state.

---

[6] Tortious interference, civil conspiracy, and conversion are intentional torts. *See MaxLite, Inc. v. ATG Elecs., Inc.*, 193 F. Supp. 3d 371, 388, 390 (D.N.J. 2016) (tortious interference and civil conspiracy); *Cavanaugh v. Norton*, No. 13-1162, 2014 WL 980815, at *5 (M.D. Pa. Mar. 13, 2014) (conversion).

As to the tortious interference claim, Plaintiff alleges that Defendant solicited Plaintiff's customers and that this solicitation occurred in part in New Jersey. AC ¶¶ 69, 109; Opp. at 14. Plaintiff also points to communications between Defendant and K.T. in support of its civil conspiracy claim. AC ¶¶ 147-48. However, as noted above, neither Plaintiff nor Client 1, whose business Plaintiff allegedly solicited, are based in New Jersey. Nor are the alleged beneficiaries[7] of Defendant's tortious interference—herself and Primary Color—residents of or based in New Jersey. *Id.* ¶ 111. In light of these facts, Defendant's emails with Client 1 employees in New Jersey (which may or may not be related to the alleged tortious interference) and one meeting with K.T. in New Jersey are insufficient to demonstrate that Defendant expressly aimed her tortious conduct at New Jersey. *C.f. IMO Indus., Inc.*, 155 F.3d at 268 (noting in the analysis of the third *Calder* prong that "a few calls or letters into the forum may be of only marginal import if the dispute is focused outside the forum"). As for Plaintiff's conversion claim, Plaintiff alleges that Defendant possesses some of Plaintiff's Confidential Information and that Hoving rerouted certain Restoration Hardware purchases expensed to Vectra to K.T.'s residence in New Jersey. AC ¶¶ 42-44, 141-43. However, Plaintiff does not allege that the Confidential Information was taken in New Jersey or that the Agreement governing this Confidential Information is connected to New Jersey. Moreover, a minor contact with the forum such as rerouting an unspecified amount of Restoration Hardware purchases to a location in New Jersey is insufficient to meet the expressly aimed requirement. *Compare IMO Indus., Inc.*, 155 F.3d at 268 (finding that the plaintiff had not demonstrated that the defendant expressly aimed its tortious conduct at New Jersey where defendant allegedly tortiously interfered with a French company and there was a "clear implication

---

[7] In addition, focusing on the beneficiaries of a scheme is not the relevant consideration; instead, the Court must review where Vectra suffered the harm.

16

from the surrounding facts that New Jersey was not the focus of the dispute") *with Remick*, 238 F.3d at 260 (finding that the third *Calder* prong was satisfied where the defendant tortiously interfered with plaintiff's contractual services conducted within the forum and where the plaintiff lived and worked in the forum).

### a. Jurisdictional Discovery

In sum, the Court agrees with Defendant that Plaintiff has not met its burden to demonstrate that personal jurisdiction over Defendant is proper. However, Plaintiff has provided sufficient information to permit jurisdictional discovery. "Although the plaintiff bears the burden of demonstrating facts that support personal jurisdiction, courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is clearly frivolous." *Toys "R" Us, Inc. v. Step Two S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) (internal citations and quotations omitted). "If a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between the party and the forum state, the plaintiff's right to conduct jurisdictional discovery should be sustained." *Id.* (internal citations and quotations omitted).

Here, Plaintiff's claims are not clearly frivolous. Plaintiff plausibly pleads that Defendant and K.T. met on several occasions, once in New Jersey, around the time that Defendant's alleged misconduct was occurring. Plaintiff also plausibly alleges that K.T. is a resident of New Jersey and that Defendant rerouted to K.T.'s residence certain Restoration Hardware shipments expensed to Plaintiff. These allegations suggest with reasonable particularity the potential existence of the requisite contacts between Defendant and New Jersey. Accordingly, the Court finds that Plaintiff should be permitted to conduct limited jurisdictional discovery. Following discovery, Hoving will

be free to renew her motion to dismiss, and Plaintiff will be given leave to file a second amended complaint.

### B. Venue

Federal Civil Rule of Procedure 12(b)(3) permits a motion to be dismiss for improper venue.  28 U.S.C. § 1391(b) provides that a civil action may be brought in

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b)(1)-(3).

The "defendant[s]…bear the burden of showing improper venue." *Myers v. Am. Dental Ass'n*, 695 F.2d 716, 724-25 (3d Cir. 1982).  When deciding a motion for improper venue, the Court "accepts the plaintiffs['] well-pled allegations regarding venue as true, . . . draws all reasonable inferences from those allegations in the plaintiffs['] favor, and . . . resolves any factual conflicts in the plaintiffs['] favor[.]" *Shah v. Centurum, Inc.*, 2011 WL 1527334, at *2 (D.N.J. Apr. 20, 2011) (quoting *Quarles v. Gen. Inv. & Dev. Co.*, 260 F. Supp. 2d 1, 8 (D.D.C. 2003)) (internal quotation marks omitted).  But "[a] court need not accept the plaintiff's well-pled factual allegations when they are contradicted by the defendant's affidavits."  *Id.* (citing *AGA Shareholders, LLC v. CSK Auto, Inc.*, 467 F. Supp. 2d 834, 842 (N.D. Ill. 2006)).  A court can go beyond the pleadings and "examine facts outside the complaint to determine whether its venue is proper."  *Id.* (quoting 5B C. Wright & A. Miller, Federal Practice and Procedure § 1352, at 324 (3d ed. 2004)) (internal quotation marks omitted).

Like personal jurisdiction, the Court finds that based on the current record, venue is not appropriate in this District. Defendant does not reside in the District of New Jersey, so § 1391(b)(1) is inapplicable. Given the Court's analysis of personal jurisdiction above, § 1391(b)(3) is not currently met. Further, Plaintiff has not demonstrated that "a *substantial part of the events or omissions giving rise to the claim* occurred, or a substantial part of property that is the subject of the action is situated" in the District of New Jersey; therefore, § 1391(b)(2) is also not applicable. 28 U.S.C. § 1391(b)(2) (emphasis added). However, the Court will reconsider whether venue is proper after Plaintiff has had the opportunity to conduct jurisdictional discovery.[8]

## IV.     CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss is **DENIED without prejudice** in order to permit discovery regarding personal jurisdiction and venue. The scope of discovery will be limited to the issue of Defendant's contacts with New Jersey and events or omissions giving rise to Plaintiff's claims that occurred in New Jersey. Each party will be

---

[8] In support of her argument that venue is improper, Defendant cites to a forum selection clause in the Sales Compensation Plans entered into between Plaintiff and Defendant which provides that the parties consent to exclusive jurisdiction in Minnesota. Br. at 17. The parties do not dispute that the Sales Compensation Plans govern one of Plaintiff's nine claims. *See id.*; Opp. at 34. A valid forum selection clause modifies the analysis of whether venue is proper and transfer of venue. *See, e.g.*, *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 57-58 (3d Cir. 2018). However, because this action is broader in scope than the single claim governed by the forum selection clause, the Court need not enforce the clause. *See Metro. Life Ins. Co. v. Bank One, N.A.*, No. Civ.A. 03-1882 SDW, 2012 WL 4464026, at *4 (D.N.J. Sept. 25, 2012) (finding that the forum selection clause should not be enforced because the action was broader in scope than the clause); *see also Farmland Indus., Inc. v. Frazier-Parrott Commodities, Inc.*, 806 F.2d 848, 852 (8th Cir. 1986), *abrogated on other grounds by Lauro Lines s.r.l. v. Chasser*, 490 U.S. 495 (1989) (affirming the district court's decision that enforcing the forum selection clause would not be reasonable because the suit was broader than the clause and noting that absent "strong policy," there was "no reason to require piecemeal resolution of [the] case").

permitted to serve ten document requests and five interrogatories without subparts and to conduct two depositions. An appropriate Order accompanies this Opinion.

Dated: October 1, 2021

                                                                                   John Michael Vazquez, U.S.D.J.